649 F.2d 1229
 7 Bankr.Ct.Dec. 1177, Bankr. L. Rep. P 68,323
 In re F & T CONTRACTORS, INC., Bankrupt.
David A. CUVRELL, Trustee, Plaintiff-Appellant,
v.
Richard MAZUR, Robert Warren and Leon Hadley, Defendants-Appellees,
David A. CUVRELL, Trustee, Plaintiff-Appellee,
v.
OLD ORCHARD BY the BAY ASSOCIATES, Defendant-Appellant.
 Nos. 79-1058, 79-1059.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 4, 1981.
Decided June 2, 1981.
 
 William W. Wumkes, Winegarden, Booth, Ricker, Shedd & Haley, Dennis M. Haley, Flint, Mich., for David A. Cuvrell.
 Timothy A. Fusco, Dykema, Gossett, Spencer, Goodnow & Trigg, Troy, Mich., for Mazur, Warren, Hadley and Old Orchard by the Bay Associates.
 Before KEITH and JONES, Circuit Judges, and BATTISTI,* Chief Judge.
 KEITH, J. Circuit Judge.
 
 
 1
 This appeal involves two related cases which were consolidated in the bankruptcy court. Old Orchard By The Bay Associates ("Old Orchard") appeals from the judgment of the district court, Judge Harvey, which affirmed a decision of the bankruptcy court denying the company's request to have a breach of contract claim resolved by arbitration as provided for in the contract between the bankrupt and Old Orchard. In the related action, the trustee appeals from a decision of the district court which reversed the bankruptcy judge's denial of a motion by the limited partners of Old Orchard to dismiss the suit against them for lack of subject-matter jurisdiction.
 
 
 2
 For the reasons discussed below, we affirm the decision of Judge Harvey in both cases.
 
 
 3
 * FACTS
 
 A.
 
 4
 Old Orchard is a limited partnership formed on December 28, 1973, for the purpose of constructing an apartment complex in Saginaw, Michigan. Richard Mazur, Robert Warren, and Leon Hadley are limited partners, each holding 15% interest in the partnership. On May 1, 1974, Old Orchard entered into a standard Federal Housing Administration construction contract with F&T Contractors, Inc. ("F&T"), the debtor, for construction of the apartment complex. Under the terms of the contract, F&T agreed to perform all work and provide all material needed for construction of the complex in return for payment of the actual cost of construction or the sum of Four Million Two Hundred Thirty Five Thousand Three Hundred Thirty One Dollars ($4,235,331.00), whichever was less. F&T began construction. However, on March 5, 1975, before completing the project, it filed for reorganization under Chapter XI of the Bankruptcy Act.
 
 
 5
 The bankruptcy court named David Cuvrell as trustee for F&T. At Cuvrell's request, the bankruptcy court granted him permission to complete construction under the original contract with Old Orchard. Old Orchard agreed to complete the contract with the trustee. On November 11, 1976, Cuvrell filed a complaint in bankruptcy court alleging that F&T had completed all work required under the contract. He sought payments allegedly due F&T under the contract. On March 21, 1977, Cuvrell amended the complaint to allege that Old Orchard owed F&T $639,949.43 and that Mazur, Warren, and Hadley, although limited partners, were individually liable because Cuvrell had relied on their oral promise that they would make capital contributions to Old Orchard in the amount that would be necessary for Old Orchard to fulfill its contract with F&T.
 
 
 6
 On January 19, 1977, Old Orchard moved for an order compelling the trustee to submit his claim against Old Orchard to arbitration. Article 1(A) of the contract between F&T and Old Orchard provides that the contract includes, by reference, the provisions of the American Institute of Architects ("AIA") Document A201, General Conditions of the Contract for Construction. Article 7.01.1, the relevant section in the AIA document, states:
 
 
 7
 All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, except as set forth in Subparagraph 2.2.9 with respect to the Architect's decisions on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of final payment as provided by Subparagraphs 9.7.5 and 9.7.6, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. (emphasis added) This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.
 
 
 8
 Old Orchard demanded that Cuvrell abide by the arbitration provision and submit the dispute to arbitration. Cuvrell refused to submit the matter to arbitration and, instead, requested that the bankruptcy court order Old Orchard to litigate the contract dispute in bankruptcy court.
 
 
 9
 On October 19, 1977, the bankruptcy judge denied the motion to compel arbitration. The bankruptcy judge, in an oral opinion, held that since there were other parties involved in the bankruptcy proceedings whose interests would not be represented at an arbitration hearing, and because the issues raised were those which a court would be as competent to decide as would an arbitrator, reference to an arbitrator would not serve the interests of the bankruptcy proceedings. Accordingly, the bankruptcy judge denied Old Orchard's motion to arbitrate.
 
 
 10
 Old Orchard appealed to the district court. On June 15, that court affirmed the ruling of the bankruptcy judge. The district court held that the decision to compel or deny arbitration was discretionary with the bankruptcy judge, and that the bankruptcy judge did not abuse his discretion in declining to order arbitration. Old Orchard's appeal to this court followed the district court's affirmance.
 
 B.
 
 11
 Cuvrell also brought a separate suit in bankruptcy court alleging that after his appointment and qualification as receiver, he spoke with the general partner of Old Orchard and to the limited partners and their agents. Cuvrell alleges that the limited partners, Mazur, Warren and Hadley, represented to him that they would be personally liable to F&T for the contract price if Old Orchard was unable to meet its obligations under the agreement. Cuvrell contends the limited partners told him that the partnership agreement stated that the limited partners were personally liable on the contract. The pertinent language in the partnership agreement reads:Limited Partnership interest representing forty-five percent (45%) of the total partnership equity allocated fifteen percent (15%) each among Richard F. Mazur, Robert A. Warren and Leon Hadley in consideration of the assignment by them of their rights to the purchaser's interest in a project and Real Estate and their commitment to supply all capital needed to complete the construction of the project in excess of proceeds from FHA Mortgage applied for by the partnership and of proceeds from capital contributors of the forty percent (40%) limited partnership interest described above.
 
 
 12
 Cuvrell argues that F&T completed the construction project and, in doing so, incurred costs which exceeded the construction mortgage balance and the capital contribution of the 40% limited partner in the amount of Six Hundred Thirty Nine Thousand Nine Hundred Forty Nine Dollars and 43/100 ($639,949.43.) Therefore, Cuvrell prays for a judgment against the limited partners in the amount of this construction cost deficit. Mazur, Warren and Hadley filed a motion to dismiss the complaint on the ground that the bankruptcy court did not have jurisdiction over the adjudication of a contract right, the existence of which was contested. Pleading in the alternative, the partners also answered the complaint, denying that any money was due and owing, and alleging, among other things, that F&T had breached the construction contract by unilaterally adjusting the cost of construction, and had completed the construction defectively. The bankruptcy judge denied the motion to dismiss the complaint, but the district court reversed that determination. Cuvrell now requests that this court reverse the district court's dismissal, and reinstate the complaint against the limited partners.
 
 II
 
 13
 With regard to the first issue presented whether the bankruptcy judge abused his discretion by declining to order the trustee to submit his claim to arbitration we agree with the district court's analysis of the case law. The decision to compel or deny arbitration is discretionary with the bankruptcy judge. In the Matter of Muskegon Motor Specialities Company v. International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, AFL-CIO, and Its Local 1272, et al., 313 F.2d 841, 842 (6th Cir. 1963). A bankruptcy judge does not abuse his discretion when he refuses to compel arbitration where the determination in such a proceeding would affect the amount, existence and priority of claims to be paid out of the general funds and, thus, involve the interests of other creditors. In the Matter of Muskegon Motor Specialities Company, supra, at 843; Johnson v. England, 356 F.2d 44, 52 (9th Cir. 1966); Bohack Corporation v. Truck Drivers' Local Union No. 807, 431 F.Supp. 646, 653 (E.D.N.Y.1977), aff'd 567 F.2d 237 (2d Cir. 1977), cert. denied, 439 U.S. 825, 99 S.Ct. 95, 58 L.Ed.2d 117 (1978). See also Kreindler, The Convergance of Arbitration and Bankruptcy, 26 Arb.J. 34 (1971).
 
 
 14
 The bankruptcy judge did not abuse his discretion in the present case by refusing to submit the contract dispute to arbitration because the claims of other creditors would have been affected by the decision of the arbitration board but those creditors would not have been allowed to participate in the proceeding. At the hearing on the motion to compel arbitration, the bankruptcy judge stated:
 
 
 15
 I think both parties have demonstrated that this is not the issue involved that both parties have stated is not something that exists solely between individuals. This was an important factor in determining whether this Court should relinquish jurisdiction to the arbitrators. As I see it, any one of the several issues that have been stated by the Defendant that he feels are subject to arbitration could affect the creditors, the general creditors in this case
 
 
 16
 Now, if this were a situation where the internal affairs of the Defendant, based upon maybe its rules of procedure such as a union might have, were at issue, working conditions, et cetera, then I would think that this would be peculiarly within the realm of arbitration, but every one of these issues that the Defendant has listed are tried out every day before a Court as part of a lawsuit.
 
 
 17
 As the bankruptcy judge noted, the arbitration would have affected the claims of the general creditors and, therefore, it was within the court's competence to retain jurisdiction over the contract dispute. See In the Matter of Muskegon Motor Specialties Company, supra, at 842-43. Also, the issues to be resolved did not require the special expertise an arbitrator would bring to the decision-making process.
 
 
 18
 It is Old Orchard's position that arbitration must be ordered when a trustee seeks to enforce a contract containing an arbitration clause absent a specific finding that arbitration would subvert special bankruptcy concerns. Old Orchard argues that the dispute in the present case concerns a construction contract claim for money damages, a subject traditionally referred to arbitration, and that such a referral would not infringe upon any matter within the exclusive province of the bankruptcy court.
 
 
 19
 First, Old Orchard is simply incorrect that a court is not competent to hear the claim. Courts of law routinely decide contract disputes which are similar to the one between Old Orchard and the trustee. Second, contrary to Old Orchard's assertion, Bohack Corporation, supra, does not require arbitration in the absence of a finding that the arbitration would subvert special bankruptcy concerns.[1] The court in Bohack Corporation held that resort to arbitration would have been improper if: (1) the arbitrator would bring no special expertise to the decision-making process, and (2) the issue to be determined by the arbitrator would touch a special bankruptcy interest. 431 F.Supp. at 653. Old Orchard takes this holding by the Bohack court that arbitration is improper if the arbitrator's expertise is not needed and if a special bankruptcy interest is not frustrated and argues that the converse is true. That is, Old Orchard contends that the bankruptcy court is compelled to order arbitration unless there is a special bankruptcy interest to be preserved. This interpretation of the Bohack decision would require the court to apply a more searching standard of review than that required under the abuse of discretion standard acknowledged in Muskegon, supra, and its progeny. The sole question here is whether the bankruptcy judge abused his discretion in refusing to order the trustee to submit to arbitration. For the foregoing reasons, we agree with the district court that he did not.
 
 III
 
 20
 In his suit against the limited partners of Old Orchard, the trustee argues that the partners are subject to the summary jurisdiction of the bankruptcy court. The limited partners maintain that the bankruptcy court does not have jurisdiction to hear the trustee's claim against them.
 
 
 21
 Jurisdiction of a court of bankruptcy is conditioned upon either consent of the defendant or possession by the court of the property which is the subject matter of the action. Bankruptcy Act §§ 2(a)(7), 23(a); Harrison v. Chamberlain, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897 (1926). See also In the Matter of Morrison v. Rocco Ferrera & Co., 554 F.2d 290 (6th Cir. 1977); In the Matter of Bayview Estates v. Handler, 508 F.2d 405 (6th Cir. 1974).
 
 
 22
 If the property to be recovered is within the actual or constructive possession of the bankruptcy court, summary jurisdiction by such a court may be exercised even in the absence of consent by the defendant. If the bankruptcy court has neither actual nor constructive possession, the Bankruptcy Act requires that a plenary action be commenced in a United States District Court, or in an appropriate state court if an independent basis for federal jurisdiction does not exist. In the Matter of Harold Morrison, supra, at 297; In the Matter of Bayview Estates, supra, at 407; 2 Collier, Bankruptcy § 23.05 (14th ed. 1971).[2]
 
 
 23
 The question presented is whether the trustee has actual or constructive possession of the debt allegedly due F&T from the limited partners. It is well settled that a bankruptcy court does have jurisdiction over contract claims or choses in action when the affirmative defenses to the claims of the trustee are "so unsubstantial and obviously insufficient, either in law or fact, as to be plainly without color or merit in the mere pretense." Willyerd v. Buildex Co., 463 F.2d 996, 999 (6th Cir. 1972), quoting In re Cadillac Brewing Co., 102 F.2d 369, 370 (6th Cir. 1939). A bankruptcy court has jurisdiction over such claims because there are no real issues of law or fact between the parties; rightful possession clearly lies with the trustee.
 
 
 24
 However, contrary to the bankruptcy court's findings, the limited partners here have raised substantial questions of law and fact. The partners alleged that the trustee's claim is based on invalid "change orders",[3] that the trustee has used inflated charges in establishing his costs, and that the construction is seriously defective. As the district court below noted, the affirmative defenses of the partners are comparable to those in Willyerd v. Buildex Co., supra, which, this circuit found, raised a substantial issue as to the existence of the contract right. In Willyerd the trustee, secured from the bankruptcy judge an order directed to Buildex to show cause why the account receivable as listed in the debtor's records should not be turned over to the trustee. Buildex responded by filing a special and limited appearance to attack jurisdiction, and alleged: (1) that it had no property belonging to the bankrupt; and (2) that the show cause order related to a disputed account receivable and such a disputed matter was not within the competence of the bankruptcy court. In its answer, Buildex further alleged that the bankrupt breached its contract with Willyerd in a number of particulars, compelling it to complete the job and incur expenses excusing further payment of any balance. This court held that the bankruptcy court could not exercise summary jurisdiction over Willyerd without its consent because the trustee's suit was an action to enforce an alleged debt from the debtor, and the debtor denied the existence of the debt. 463 F.2d at 1000.
 
 
 25
 In re Bayview Estates, Inc., supra, also holds that where substantial issues of law or fact are raised as to the existence of a debt, the bankruptcy court does not have jurisdiction over the dispute. 508 F.2d at 407. That case involved the bankruptcy of a mobile homes development corporation which became insolvent. Bayview Estates, the debtor, developed 120 mobile home sites and attendant recreational facilities on a tract of land in Anchorville, Michigan. The tenants filed an action against the debtor, alleging that they were damaged as a result of various health and safety code violations in the park. In conjunction with the filing of the action against the debtor, the tenants began withholding their rent payments. Later, the parties agreed to a consent order which required that the tenants pay their rent into an escrow account held by the local township treasurer. After the trial began, filed a Petition for Arrangement under Chapter XI. The bankruptcy court issued an order staying the suit against the debtor and the tenants immediately discontinued making rent payments to the treasurer and began paying the same into a non-interest bearing account in the names of their attorneys. The bankruptcy court, after issuing a show cause order, determined that it had jurisdiction in a summary proceeding to determine rights as to the escrowed funds. The tenants appealed to the district court, which held that the escrowed funds were not subject to the summary jurisdiction of the bankruptcy court. The debtor then appealed the district court's decision. This court first noted that the test of the bankruptcy court's jurisdiction was "not title in but possession by the bankrupt at the time of the filing of the petition in bankruptcy." Id. The court then concluded that neither the debtor nor the receiver ever had physical possession of the funds, and the township treasurer was not a bailee or an agent of the debtor. Therefore, the debtor did not have actual or constructive possession of the escrow account.
 
 
 26
 Both Bayview Estates and Willyerd stand for the proposition that a bankruptcy court does not have jurisdiction over a disputed claim such as the one between the trustee and the limited partners of Old Orchard because neither the trustee nor F&T had actual or constructive possession of the debt. As in Bayview Estates, the limited partners here allege facts which, if true, either excuse their obligation to personally pay the contract price or shows that such an obligation never existed.
 
 
 27
 The cases cited by the trustee are not inapposite to Bayview Estates and Willyerd. The trustee cites Governor Clinton Company v. Knott, 120 F.2d 149 (6th Cir. 1941); and In re Hollingsworth and Whitney Company, 242 F. 753 (1st Cir. 1917), for the principle that a bankruptcy court may hear cases where a party disputes the obligation which is allegedly owed the bankrupt's estate. The limited partners argue that the cases cited by the trustee involve situations where a fraud was perpetrated on the bankruptcy court. The partners further argue that no fraudulent acts have been alleged here which would give the bankruptcy court jurisdiction.
 
 
 28
 The trustee correctly notes that jurisdiction in In re Hollingsworth and Whitney Company was not predicated upon a determination of fraud on the court, but was based on the fact that the disputed claim was under an agreement "unmistakably made with officers of the court appointed by it in a pending bankruptcy case." 242 F. at 756. The trustee then reasons that the bankruptcy court has jurisdiction over Mazur, Hadley, and Warren because they made an oral contract with the court through its representative, the trustee. The trustee's analogy must fall.[4] The limited partners did not "unmistakably" make a contract with the court. In fact, the major issue in this dispute is whether the partners made the oral contract with the trustee. The trustee did not record the oral agreement with the court, and the limited partners deny the existence of the contract.[5]
 
 IV
 
 29
 The judgment of the district court is affirmed, and the cause remanded to the bankruptcy court for proceedings not inconsistent with this opinion.
 
 
 
 *
 Hon. Frank J. Battisti, Chief Judge, United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Even if a finding that arbitration will subvert special bankruptcy interests were necessary, we believe that finding has been made. Protection of general creditors is a major function of the bankruptcy proceedings. See generally In the Matter of Muskegon Motor Specialties Company, infra. Since the creditors contributed an additional $640,000 after the trustee agreed to complete F&T's contract, and since the general creditors would not be represented in the arbitration between Old Orchard and the trustee, the bankruptcy court acted well within its discretion when it refused to compel the trustee to arbitrate. Merely because the bankruptcy court approved the trustee's decision to complete the construction contract which contained the arbitration agreement, does not mean that arbitration in this instance is mandatory. The bankruptcy judge still has the obligation to determine if the arbitration frustrates bankruptcy interest, i. e., if it frustrates the rights of the general creditors
 
 
 [2]
 Various reasons have been given for the rule that a bankruptcy court only has jurisdiction over claims which are obviously insufficient in law or fact. For a summary of those reasons, see In the Matter of Morrison, infra, at 297, quoting 2 Collier, Bankruptcy § 23.15(7) (14th ed.):
 It has been said that the machinery of the referee's court is not adapted to the formal procedure necessary for a plenary action; and it has been asserted that although for many purposes the referee has the powers of a court of bankruptcy, it was not the intent of Congress to confer upon referees the special power given the district courts to hear such plenary suits. In Weidhorn v. Levy (253 U.S. 268, 40 S.Ct. 534, 64 L.Ed. 898), the court stressed the importance of General Order 12(1), and pointed out that the word "proceedings" therein could not be taken to mean independent plenary actions. Whatever the basis, the rule is firmly entrenched, and regardless of the general position of the referee as a court of bankruptcy under the Act, the Rules or local rules conferring such power, the referee's jurisdiction is summary only. He cannot, therefore, hear and determine the issues in a suit by the receiver or trustee where the defendant is entitled to a plenary form of action and has not consented to the referee's exercise of summary jurisdiction. (footnotes omitted).
 
 
 [3]
 The limited partners, in their Motion to Dismiss Amended Complaint for Lack of Subject Matter Jurisdiction, assert that at least $124,000 of the amount claimed by the trustee is based upon change orders to the original contract which are invalid due to the failure of the trustee to obtain prior approval from Old Orchard's general partner as required under the contract. Article I(E) of the contract provides:
 Changes in the Drawings and Specifications or any terms of the Contract Documents, or orders for extra work, or changes by altering or adding to the work, which will result in any net construction cost decrease of more than 2% of the contract amount may be effected only with the prior written approval of the Owner's Lender (more particularly identified below and hereinafter referred to as the "Lender") and the Commissioner and under such conditions as either the Lender or the Commissioner may establish.
 If the bankruptcy court were to find this provision controlling, Old Orchard would have raised a substantial question as to its liability for $124,000 in increased costs of construction due to change orders.
 
 
 [4]
 A review of the facts in Hollingsworth shows why the bankruptcy court was held to have jurisdiction over the dispute. The respondent, Hollingsworth and Whitney Company, owned timber land in Maine. Prior to the filing of the bankruptcy petition, the debtor entered into a contract to cut and remove certain hardwood logs. After the petition was filed, the trustee claimed the right to remove the logs previously cut. The parties entered into a stipulation to the effect that the land owner would advance funds to remove and sell the logs, and that the question of the ownership of the proceeds would be left for the determination of the court. The logs were sold, but the land owner did not pay the proceeds over to the trustees. When the trustee commenced a show cause proceeding, the land owner answered by contesting the jurisdiction of the bankruptcy court. The land owner claimed the court had no jurisdiction because the land owner was an adverse claimant in the subject matter of the controversy
 The bankruptcy court was held to have jurisdiction over the dispute because the land owner's affirmative defenses were obviously insufficient and "plainly without color or merit." Willyerd v. Buildex, supra. The land owner had entered into a stipulation on record with the court and consented to ultimate resolution by the court. These two facts led the First Circuit to conclude that such a dispute was within the summary jurisdiction of the bankruptcy court. No special competence available in plenary proceedings was needed, since the facts were on the record through stipulation of the parties.
 
 
 [5]
 The trustee's Petition for Authority to Complete Contract Pursuant to Agreement to the bankruptcy court does not contain any reference to an oral agreement between the trustee and the limited parties